María Sabina Rivera et al., etc., Plaintiffs and Appellants, v. Francisco Cardona, Defendant and Appellee.

No. 7998. Argued December 5, 1939.—Decided May 22, 1940.

*Benjamín Ortiz* for appellants. *F. González Fagundo* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

The issue in the present appeal is whether an illegitimate son who has not qualified as a natural son in accordance with section 125 of the Civil Code, 1930 ed., can bring an action for support against his alleged parents without first showing the paternity or maternity, as the case may be, by means

of a final judgment in a criminal or civil action, or as resulting from an indubitable document from the father or mother wherein the filiation is expressly recognized.

The issue thus raised hinges upon the construction to be given to section 129 of the above statute which literally reads as follows:

"Section 129.—The right to the support mentioned in the preceding section can only be exercised:

"1. Where the paternity or maternity is inferred from a final judgment in a criminal or civil action.

"2. Where the paternity or maternity is shown by an indubitable document from the father or mother wherein the filiation is expressly recognized."

In the instant case the judgment was rendered on a demurrer to a complaint which fails to contain any allegation as to the existence of the final judgment or indubitable document showing the paternity. Therefore, our discussion must be confined to a determination of whether the pronouncement regarding the paternity may be made within the action for support without having first obtained a final judgment establishing the paternity.

The issue involved is not wholly new in this jurisdiction. In a series of criminal cases, starting with *People* v. *Rohena*, 52 P.R.R. 30, and following with *People* v. *López*, 54 P.R.R. 279; *People* v. *Rotger*, 55 P.R.R. 133; *People* v. *Pérez*, 55 P.R.R. 655, and ending with *People* v. *Rogelio Díaz*, decided yesterday (*per curiam* decision), this court has consistently held that paternity, that is, the relation of father to son that might exist between the accused and the minor who alleges abandonment, may be established within the prosecution for abandonment of children. In *People* v. *López*, *supra*, where this question is most widely discussed, this court has expressed itself, through Mr. Chief Justice del Toro, as follows:

"It is insisted upon that the statute speaks of acknowledged illegitimate children and that section 129 of the Civil Code expressly

provides that the right to claim support by illegitimate children that have not been acknowledged can only be exercised if the paternity or maternity is inferred from a final judgment rendered in a civil or criminal suit or if it appears from an indubitable document of the father or the mother, where the filiation is expressly acknowledged.

"Illegitimate children are divided into two classes, to wit: children born out of wedlock, from parents who, at the moment when such children were conceived, could have intermarried, and children born out of wedlock, from parents who, at the time they were conceived, could not have intermarried. The former are called natural children and it is in their behalf that the law created an action for their acknowledgment. Sections 125, 126 and 127 of the Civil Code, 1930 ed. In behalf of the latter no such action exists. The civil law only acknowledges them the right—section 128 of the Code—to such support from the parents as is prescribed in section 143.

"There is no doubt that the word acknowledged as used by the legislator in regard to illegitimate children in criminal law—section 263 of the Penal Code, 1937 ed.—was so used inadvertently. But starting from the basis that they do exist, we believe that it means that the crime is only committed where a father, who is in a position to do so, fails to support his illegitimate issue whom he has held as such children publicly or privately, or because being his issue, he would have been bound to acknowledge them should they have been natural children. Thus, reasonably construing the provisions of the Civil Code (section 129)—in harmony with the amendment introduced by the Legislative Assembly to the penal law in 1931 (Act No. 36 of 1931, page 352), we are of the opinion that the (judgment in the) criminal proceeding therein referred to can be the one rendered within the criminal action prosecuted for abandonment of minors as in the instant case.

"If it is shown therein, beyond all reasonable doubt, that the (father knew that the) minor was his son, or had held him as such, and, consequently, that he should have acknowledged as such or had already acknowledged him, and that in spite thereof, voluntarily and without any legal excuse had failed to comply with the duties imposed upon him by law to furnish the child with the required food, clothing, or medical assistance, he should be found guilty even though the document referred to in the second paragraph or the judgment rendered in a civil action of which the first paragraph of section 129 of the Civil Code so many times cited speaks, are (is) not presented.

"Within our present state of the law, the judgment rendered in a criminal prosecution of which said section speaks, can be no other than the one rendered in the criminal action for abandonment of minors where all the essential facts can be duly established. The duty of the father arises from the material fact that he is the father. Once it has been duly proved that he is the father, and that so being he failed to discharge his duties in the manner established by the criminal law, the crime should be understood to have been committed.

"  .      .      .      .      .      .      .      .

"See the following cases where it was held that although there exists a special proceeding for a declaration of heirship, where an heir takes advantage of another action without making use of the former proceeding, he may, within the latter suit and for all its purposes, establish his standing as heir making use of all appropriate evidence: *Morales et al. v. Landrau,* 15 P.R.R. 761; *Soriano et al. v. Rexach,* 23 P.R.R. 531; *Fortis v. Fortis,* 25 P.R.R. 64; *Succn. of Rodríguez v. Pérez,* 25 P.R.R. 73; *Casanovas & Co. v. Ramírez et al.,* 25 P.R.R. 581; *Méndez v. Martínez,* 26 P.R.R. 87; *Heirs of Torres v. Torres,* 29 P.R.R. 847; *Ginorio v. Registrar,* 50 P.R.R. 384."

We said at the start of our discussion that the issue is not entirely new in our jurisdiction, although the same has only been raised in criminal prosecutions for the abandonment of children; however we fail, indeed, to see any reason for changing our opinion already formed where an action for support is involved in a civil case like the one before us.

The urgency of every claim for support requires that the procedure to secure the same be speedy and free from unnecessary delays so that any judgment thereon should not become illusory by reason of its being late. The legislator, being aware of such necessity, has expressly decreed that appeals may be taken from judgments in actions claiming support, but that this shall not prevent the execution thereof. Section 618 of the Code of Civil Procedure, 1933 ed. No other purpose, unless it be to unnecessarily prejudice the right of the claimant, shall be served by compelling him, as a prerequisite for the prosecution of an action for support, to defeat his progenitor in action to determine his paternity,

since such question may be settled without any difficulty whatever within the action for support itself, thus rendering the claim for support more speedy and less costly.

In addition to the cases cited in *People* v. *López, supra,* where the prosecution of a declaration of heirship within actions for damages, of revendication, etc., has been allowed, we have in our jurisprudence another precedent applicable by analogy to the question now before us. We refer to the construction of section 1081 of the Civil Code, 1930 ed., which provides:

"Section 1081.—Should the obligation not fix a period, but it can be inferred from its nature and circumstances that there was an intention to grant it to the debtor, the courts shall fix the duration of the same.

"The court shall also fix the duration of the period when it may have been left to the will of the debtor."

A strict construction of this provision requires, in the cases to which the same refers, that resort first be had to the court for it to fix the period, and only when the same is fixed and has expired without the obligation being performed may the action be established for compelling its execution. It might be countered that so long as the period previously fixed by the court has not expired no cause of action has accrued and that, therefore, an action brought prior to the fixing of the period would be premature. This court, however, has unanimously, in *Nicorelli* v. *Ernesto López & Co.,* 26 P.R.R. 49, in the furtherance of justice and for the sake of speediness in the proceedings, rejected the strict construction to which we have referred and construed said section in the sense that the fixing of the time to which section 1081, *supra,* refers, may be done within the action to enforce the obligation.

Subsequently, in *Jiménez* v. *Ramos,* 51 P.R.R. 375, 377, this court, through Mr. Justice Córdova Dávila, citing with approval that of *Nicorelli* v. *López, supra,* expressed itself as follows:

" . . . .In the case of *Sons of Tomás Pietri* v. *Vicens Bros.*, 33 P.R.R. 241, 243, we said that the very fact that it does not appear from the complaint that the debtor was allowed a certain time for payment and that this was not deducible from the nature of the obligation, renders inapplicable section 1095 (sec. 1081, 1930 ed.) of the Civil Code alleged by the appellants to have been violated. But even if this were not so, even if from the nature and circumstances of the obligation it could be inferred that there was the intention to grant a term to the debtor, we think that in the furtherance of justice and for the sake of speediness in the proceedings, we should adhere to the rule established by this court in *Nicorelli* v. *Ernesto López & Co.*, 26 P.R.R. 49, where it was held that when in an action to recover a debt which has been acknowledged in a public instrument, the court, after considering the evidence, finds that it was intended to set a time for payment but that this was not done, it may, under the provisions of section 1095 of the Civil Code (sec. 1085, 1930 ed.), fix what it considers a reasonable time therefor, it not being necessary to bring an action solely for the purpose of fixing such time. The court in said case analyzes the provisions of the Civil Code, cites Manresa and Scaevola, and says that from their reasoning, particularly that of Scaevola, it appears that the whole question may be disposed of in a single action. And this is as it should be. The defendant in this case owes a certain sum of money to the plaintiff. He is bound to make payment upon demand. Why should the creditor be compelled to prosecute two actions, one to fix the time for payment and another to collect the debt, when both questions can be settled in a single action? We are of opinion that the lower court did not commit the error assigned."

The right to support is so intimately connected with the determination of the paternity that we fail to see any reason, following the precedent laid down in *Nicorelli* v. *López, supra*, to prevent the disposition of the controversy in a single proceeding, whether the same is directed to the determination of the paternity and, as an incident thereof, to the claim for support, or whether, as in the case at bar, to the claim for support where incidentally the paternity might be established.

The delay in our determination of this suit, which was submitted on December 5 of last year, does not seem to harmonize with the arguments above set forth in connection

with the dispatch which a claim for support should be disposed of. We must state, however, that the delay in the present case was the result of the wide discussion in conference of the questions involved herein.

From the foregoing, the appeal must be sustained, the judgment appealed from reversed and the case remanded to the lower court for further proceedings not inconsistent with this opinion.

Mr. Justice Wolf, dissented.